IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONATHAN RODERICK KEOLA NAMAUʻU, #A0224560,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>DR. ROSEN, DR. DeWITT, DR. HALEEM, DEPARTMENT OF PUBLIC SAFETY, HALAWA CORRECTIONAL FACILITY, AND SAGUARO CORRECTIONAL CENTER,<br><br>　　　　　Defendants.<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIV. NO. 10-00475 JMS/KSC<br><br>ORDER GRANTING DEFENDANT DR. HALEEM'S MOTION TO DISMISS COMPLAINT FILED 8/17/10, AND GRANTING LEAVE TO AMEND |

## ORDER GRANTING DEFENDANT DR. HALEEM'S MOTION TO DISMISS COMPLAINT FILED 8/17/10, AND GRANTING LEAVE TO AMEND

In this 42 U.S.C. § 1983 prisoner civil rights action, Plaintiff Jonathan

Namauʻu ("Plaintiff" or "Namauʻu") alleges violations of the Eighth Amendment

for deficient medical treatment because he has lost vision in his left eye.

Defendant "Dr. Haleem" (Muhammed A. Haleem, M.D., or "Haleem") moves to

dismiss claims against him, arguing that Plaintiff failed to exhaust available

administrative remedies as required by 42 U.S.C. § 1997e(a).[1]  The record

establishes that Plaintiff did in fact fail to exhaust remedies for the Complaint's

allegations against Haleem, and the court therefore GRANTS Haleem's Motion.

The dismissal, however, is without prejudice.  Plaintiff is granted leave to file an

Amended Complaint.

## I. BACKGROUND

**A.    The Complaint**[2]

Plaintiff is an inmate at the Halawa Correctional Facility ("HCF"), but

was previously incarcerated (while still in custody of the Hawaii Department of

Public Safety) at the Saguaro Correctional Center ("SCC") in Arizona from June

26, 2008 through June 22, 2010.  *See* Doc. No. 1 at 1; Doc. No. 21-2 ¶ 6.  He had

been transferred to SCC from HCF on June 25, 2008, and was transferred back to

HCF on June 23, 2010.  Doc. No. 27-8 at 3, 7; Doc. No. 33-1 ¶ 12.  Plaintiff's

Complaint, brought under 42 U.S.C. § 1983, alleges violations of the Eighth

Amendment based upon inadequate and deliberately indifferent medical care --

---

[1] The Motion concerns only Haleem.  Co-Defendants "Dr. Rosen" ("Rosen") and "Dr. DeWitt" ("DeWitt") have filed a Statement of No Position as to Haleem's Motion.  *See* Doc. No. 26.

[2] Plaintiff filed his August 17, 2010 Complaint *pro se*.  Although the Complaint was not amended, Plaintiff is now represented by counsel who entered an appearance on September 20, 2010.  *See* Doc. No. 7.

before, during, and after his incarceration at SCC.  Doc. No. 1 at 2, 7.  The

Complaint names HCF physicians Rosen and DeWitt, and SCC physician Haleem

as Defendants in both their official and individual capacities.  *Id.* at 1-2.

Plaintiff is diabetic.  Doc. No. 27-8.  He alleges he lost sight in his left

eye because Rosen "knowingly deprived [Plaintiff of] adequate medical treatment

for eyes: deliberate indifference."  Doc. No. 1 at 2.  He claims DeWitt "failed to

adequately treat left eye resulting in loss of sight, headaches, pain & anguish."  *Id.*

Similarly, he alleges Haleem "failed to adequately treat eye resulting in pain &

anguish and loss of sight."  *Id.*  The Complaint alleges in Count I ("Eighth

Amendment Right to Medical Care Cruel and Unusual Punishment") that:

> Since 2007 Doctors:  Defendants(s) Dr. Rosen; Dr.
> DeWitt; and Dr. Haleem have failed to adequately treat
> eyes resulting in loss of sight pain & suffering violating
> my Eighth Amendment right to adequate medical care.
> Dr. Haleem Dr @ Saguaro stated awaiting approval from
> Hawaii to treat. . .  Left eye is now blind right is partial.

*Id.* at 5 (grammatical errors in original).

Haleem's Motion does not address the allegations on the merits.

Rather, it raises a threshold requirement -- whether Plaintiff exhausted

administrative remedies regarding medical care by Haleem while at SCC (before

Plaintiff's transfer back to HCF).

**B.     SCC's Administrative Exhaustion Procedure**

According to SCC Grievance Coordinator Juan Valenzuela, the SCC provides inmates an Inmate Handbook when they arrive at SCC. The Inmate Handbook, among other instructions, contains SCC's administrative grievance policy and procedures. *See* Doc. No. 21-2 ¶ 8. SCC also posts the policy in the library and housing units, and it includes information on filing medical grievances. *Id.* ¶¶ 8, 10. If an inmate expresses difficulty understanding the procedures, SCC staff members are available to explain the grievance policy and procedure on an individual basis. *Id.* ¶ 8. Before filing a formal grievance, a prisoner is required to attempt to resolve problems with an "informal" grievance. *Id.* ¶ 13. The first step requires a prisoner to submit a "Request for Service" to attempt to resolve issues through case or unit managers. *Id.* ¶ 14. If the prisoner is not satisfied with the result, the inmate may then attempt to resolve the grievance by filing a Form 14-5A, the Informal Resolution form. *Id.* ¶ 15. After receiving the Form 14-5A, the Facility Grievance Officer and Case Manager have fifteen days to return a decision to the inmate. *Id.* ¶ 17.

If the prisoner is unsatisfied with the outcome, a formal grievance can be filed on a Form 14-5B, Formal Grievance, within five calendar days of the "unresolved Informal Resolution." *Id.* ¶ 19. A prisoner must attach the Form 14-

5A to the formal grievance. *Id.* Within fifteen days, the Grievance Coordinator investigates the complaint and renders a decision. *Id.* ¶ 20. The inmate may submit an appeal to the Warden within five days of a decision; the Warden has fifteen days to respond, and that decision is considered final and the last step in exhausting prison administrative remedies. *Id.* ¶ 22.

According to Valenzuela, inmate grievances are noted in a Grievance Log, and copies of grievances are maintained in each inmate's grievance file. *Id.* ¶ 28. "All valid Informal Resolutions and Formal Grievances are logged in the Inmate Grievance Log. Informal Resolutions and Formal Grievances deemed invalid are rejected and not logged." Doc. No. 33-1 ¶ 8. "Each grievance is assigned a number, and "inmates are always given a photo copy of their informal resolution or formal grievance so that an inmate may retain a copy for his records." Doc. No. 29-1 ¶¶ 5, 7. Inmates are given copies of all Informal Resolutions and Formal Grievances, even if deemed invalid. Doc. No. 33-1 ¶ 11. If an inmate does not receive a response to either an Informal Resolution or Formal Grievance, the inmate may grieve that he has not received such a response. Doc. No. 29-1 ¶ 6.

## C.    Lack of Evidence of a Relevant Grievance Filed by Plaintiff at SCC

Valenzuela reviewed the SCC Grievance Log and his inmate grievance files, and determined that "[t]here are no grievances filed by [Plaintiff]

concerning the conduct he alleges in his Complaint -- that Dr. Haleem failed to adequately treat his left eye which resulted in loss of sight, headaches, pain and anguish." Doc. No. 21-2 ¶ 30. He also attests that "[t]here are no grievances filed by [Plaintiff] advising that he did not receive a response to any previously filed grievances or the conduct he alleges in his Complaint[.]" Doc. No. 29-1 ¶ 10.

In response, Plaintiff attests only that he "tried to file a grievance [at SCC] but the prison officials made it difficult for me to do so." Doc. No. 27-1 ¶ 6. He indicates he "talked with [his] counselor or case manager . . . and completed documents there in the Arizona facility to file a grievance." *Id.* ¶ 7. "Unfortunately, I did not keep a copy of that, as the document went to my counselor or case manager[.]" *Id.* He concludes that:

> I, therefore, dispute the facts claimed by Defendant Dr. Haleem in his motion to dismiss in which he claims that I failed to exhaust my administrative remedies to file grievances in the Arizona Correctional Facility. I did file such a grievance but currently I don't have copies of such grievance so need to get that from the Defendant Dr. Haleem or the Arizona Correctional Facility.

*Id.* ¶ 10.

Plaintiff's counsel describes efforts made to obtain prison records: In response to a request for production of documents, counsel for co-Defendants Rosen and DeWitt gave Plaintiff's counsel access to Plaintiff's institutional file

and the grievance record. (These are apparently HCF records, and do not necessarily include all SCC records.) Plaintiff's counsel selected documents from those records, and was given copies of most (but not all) of them. Doc. No. 27-2 ¶ 5. Accordingly, the record contains Plaintiff's administrative grievances regarding, among other complaints, Plaintiff's medical treatment while at HCF in August of 2010. *See* Doc. No. 27-7. There are, however, no grievances filed regarding relevant medical treatment while Plaintiff was at SCC.

But Plaintiff's counsel suggests there are other records. He attests that, while examining documents in Plaintiff's institutional file, he saw a letter or email from a relative of Plaintiff "complaining to the [unspecified] facility that she was very concerned about Plaintiff's diabetic condition because she saw one of his legs was turning black or dark blue," and that a copy of the letter was not produced to Plaintiff's counsel in discovery.[3] Doc. No. 27-2 ¶ 7. Even assuming, however, that Plaintiff's institutional file contains a complaint from Plaintiff's relative (and further assuming it was addressed to SCC officials), there is no indication that it was part of a proper grievance submitted by Plaintiff, much less that the SCC grievance process was completed through an appeal to the SCC Warden.

---

[3] Rosen and DeWitt had taken the position that the letter is not relevant. *See* Doc. No. 27-6 (letter from Deputy Attorney General Loui stating "[d]ocuments contained in the 'Correspondence' section of Mr. Namauu's institutional file, although requested, have not been provided. Those documents are beyond the scope of discovery[.]").

The record does contain a "Request for Service" from Plaintiff while at SCC dated July 12, 2008. *See* Doc. No. 32-2. The Request for Service was accompanied by a July 12, 2008 "Informal Resolution." The Informal Resolution was deemed "invalid" because an Informal Resolution must be preceded by a Request for Service, not filed "at the same time as the Informal Resolution[.]" Doc. No. 33-1 ¶ 15. This was apparently the only Informal Resolution (valid or invalid) that Plaintiff submitted while at SCC. *Id.* ¶ 14. That July 12, 2008 Request for Service and accompanying Informal Resolution both concerned heart problems and chest pain -- they did not mention treatment of eyes or vision. Doc. Nos. 32-2, 33-1 ¶ 17. The Request for Service partially sought "a transfer back to Halawa Correctional Facility" and the Informal Resolution requested "a verbal and written apology by [Corrections Corporation of America] personnel . . . for the unprofessional training of employees handling medical issue[s]." Doc. No. 32-2, at 1, 3.

**D.    Evidence Regarding Scheduled Eye Surgery in May of 2010**

While at SCC, Plaintiff reported a problem with his eyes in February 2010, and received an outside ophthalmology consultation at the Southwest Eye Center on April 22, 2010. Doc. No. 38-2 ¶¶ 12-14. He was diagnosed with diabetic retinopathy and surgery was recommended. *Id.* ¶ 14. Eye surgery was

scheduled for May 10, 2010.  *Id.* ¶ 16; Doc. No. 32-1 Ex. 7, at 4.  It is undisputed,

however, that Plaintiff did not know the date of the surgery.  Doc. No. 37-1 ¶¶ 4-

8.[4]  Haleem also told Plaintiff that Haleem needed approval from officials in

Hawaii before he could authorize the surgery.  *Id.* ¶ 13.  The surgery did not take

place as scheduled while Plaintiff was at SCC, and he was transferred back to HCF

on June 23, 2010.

## E.    **Procedural Background**

Plaintiff filed the Complaint on August 17, 2010.  In lieu of an

Answer, Haleem filed his Motion to Dismiss on December 20, 2010.  Plaintiff filed

an Opposition on January 24, 2011, and Haleem filed a Reply on January 31, 2011.

The court held a hearing on March 4, 2011.  Plaintiff filed a Supplemental

Memorandum on March 15, 2011, and Haleem filed a Reply to that Memorandum

on March 28, 2011.

## II.  <u>LEGAL STANDARD</u>

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought

with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

---

[4]  A correctional officer in the consultation room advised the Southwest Eye Center physician that Namauʻu should not know when surgery was scheduled.  Doc. No. 37-1 ¶ 4. Haleem explains that inmates are not told exact dates of scheduled procedures for security reasons.  Doc. No. 38-2 ¶ 16.

such administrative remedies as are available are exhausted."  Exhaustion is mandatory.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also McKinney v. Carey*, 311 F.3d 1198, 1199-00 (9th Cir. 2002) (per curiam).  All available remedies must be exhausted; even when the prisoner seeks relief not available in grievance proceedings (such as money damages), exhaustion is still a prerequisite to bringing suit.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  The inmate must complete the grievance process *before* filing suit; exhaustion during the pendency of the litigation will not save an action from dismissal.  *McKinney*, 311 F.3d at 1200.  Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  *Woodford*, 548 U.S. at 90.

A prisoner's failure to exhaust is an affirmative defense that Defendants have both the burden of raising and proving.  *Jones v. Bock*, 549 U.S. 199 (2007); *see also Wyatt v. Terhune*,, 1119 (9th Cir. 2003) ("§ 1997e(a) creates a defense -- defendants have the burden of raising and proving the absence of

exhaustion."). A nonexhaustion defense should be raised in an unenumerated Rule

12(b) motion rather than in a motion for summary judgment. *Wyatt*, 315 F.3d at

1119. In deciding such a motion, the district court may look beyond the pleadings

and decide disputed issues of fact. *Id.* at 1119-20. When such a motion to dismiss

requires the court to look beyond the pleadings and consider evidence, it does so

under "a procedure closely analogous to summary judgment." *Id.* at 1119 n.14.

## III. <u>DISCUSSION</u>

### A. **Plaintiff Failed to Exhaust Administrative Remedies as to the Allegations of Medical Treatment by Haleem at SCC**

Haleem contends that Plaintiff failed to exhaust his administrative

remedies as to any relevant medical care by Haleem while Plaintiff was

incarcerated at SCC. Neither the SCC Grievance Log nor Plaintiff's grievance file

contains any indication that Plaintiff filed a valid grievance -- whether informal or

formal -- at SCC raising any of the allegations in the Complaint against Haleem.

*See* Doc. No. 21-2 ¶ 30; Doc. No. 29-1 ¶ 10. If Plaintiff had submitted such a

grievance, it would be in the SCC Grievance Log. Doc. No. 21-2 ¶ 28; Doc. No.

29-1 ¶ 8. Although there is an "invalid" Informal Resolution and accompanying

Request for Service submitted on July 12, 2008, those documents refer to chest

pain and heart problems -- not problems with eyes or vision which are at issue in

this suit. It is also undisputed that Plaintiff was aware of the SCC grievance policy

and requirements, and that SCC staff were available to explain the policy or assist inmates if they did not understand it. Doc. No. 21-2 ¶ 8. Haleem has therefore met his *prima facie* burden to demonstrate that Plaintiff has failed to exhaust fully and properly. *See Wyatt*, 315 F.3d at 1119 (stating in this context that defendants "have the burden of raising and proving exhaustion").

In response, Plaintiff has neither refuted Haleem's showing with proof that Plaintiff did exhaust, nor has he created a genuine question as to exhaustion sufficient to deny the Motion. Rather, Plaintiff argues in his Opposition that he "tried to complete the documents at the Arizona facility to file his grievance about his medical care for his eyes [and] did what he thought was correct but his documented grievance was somehow lost or misplaced." Doc. No. 27, at 9. Because "Dr. Haleem certainly knew about [Plaintiff's] medical condition," Plaintiff contends "there has been substantial compliance with the administrative process." *Id.*

But there is no exception to the exhaustion requirement for "substantial compliance" with the prison administrative process. Rather, "*[a]ll* 'available' remedies must . . . be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (emphasis added). "[E]xhaustion in cases covered by § 1997e(a) is now

mandatory." *Id.* (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *see also Woodford*, 548 U.S. at 85.

Even crediting Plaintiff's general statement that Plaintiff filed some sort of grievance at SCC (*i.e.*, his declaration that "I . . . dispute the facts claimed by Defendant Dr. Haleem in his motion to dismiss in which he claims that I failed to exhaust my administrative remedies to file grievances in the Arizona Correctional Facility . . . I did file such a grievance but currently I don't have copies[.]"), this assertion does not indicate that Plaintiff submitted a grievance regarding the subject of this suit, much less that he fully completed the SCC administrative process regarding Haleem as required by § 1997e(a). *See Woodford*, 548 U.S. at 90 (explaining that "proper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)'") (emphasis in original) (citation omitted). Indeed, the record indicates that Plaintiff's institutional file contains no such information. Again, the limited ("invalid") Informal Resolution filed by Plaintiff at SCC did not concern the subject at issue in this suit. Doc. No. 32-2.

///

///

**B. The Complaint's Allegations are Insufficient to Excuse Exhaustion Based on Remedies Being "Unavailable"**

*1. Improper Screening*

Although exhaustion is mandatory, an inmate must only exhaust administrative remedies "as are available." 42 U.S.C. § 1997e(a). Under Ninth Circuit law, exhaustion is excused when "improper screening" of grievances occurs. *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). *Sapp* establishes that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under [§ 1997e(a)]." *Id.* at 823. If prison officials screen out an inmate's grievances or appeals for improper reasons, the inmate cannot pursue the necessary administrative process, and, consequently, his administrative remedies become "unavailable." *Id.*

To invoke this "effectively unavailable" exception to exhaustion, "a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening." *Id.* Specifically, the inmate must establish that (1) he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficiently exhausted the claim he brought in court, and (2) prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations. *Id.* at 823-24.

14

Plaintiff has not made the necessary showing to apply this exception. Although he states that he "tried to file a grievance [at SCC] but the prison officials made it difficult for me to do so," Doc. No. 27-1 ¶ 6, this statement does not demonstrate that he actually submitted, or attempted to submit, a grievance that "if pursued through all levels of administrative appeals, would have sufficed to exhaust his claim." *Sapp*, 623 F.3d at 823-24. Nor is there any evidence that prison officials improperly screened a grievance, or had "draconian procedural requirements" such that administrative remedies were "effectively unavailable." *Id.* at 827. (The July 12, 2008 "Informal Resolution" -- on an unrelated subject -- was deemed invalid for failure to follow proper procedure to first seek a "Request for Service.")

Plaintiff's evidence that he exhausted administrative remedies as to claims against co-Defendants Rosen and DeWitt (who were allegedly involved with Plaintiff's medical care at HCF), proves nothing as to exhaustion against Haleem -- who is a physician at an entirely different facility (SCC) in a different State. *See Jones*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

## 2. Timing of Plaintiff's Transfer from SCC back to HCF

The record, however, indicates at least a possibility that the timing of Plaintiff's transfer from SCC back to HCF in June 2010 rendered it impossible for him to file a grievance at SCC regarding an aspect of Haleem's treatment relating to Plaintiff's loss of vision -- and in that sense rendered an administrative remedy "unavailable." *See Bradley v. Washington*, 441 F. Supp. 2d 97, 102-03 (D. D.C. 2006) (finding remedies unavailable where inmate was transferred from a D.C. jail to federal prisons before having an opportunity to grieve, and where transfer did not leave administrative remedies intact); *Key v. Toussaint*, 660 F. Supp. 2d 518, 525 (S.D.N.Y. 2009) (excusing exhaustion requirement where state grievance process was "unavailable" after transfer from state to federal custody); *Heilscher v. Arpaio*, 2007 WL 625919, at *2 (D. Ariz. Feb. 26, 2007) ("A transfer between two different systems may possibly render remedies unavailable.").

As set forth above, Plaintiff was examined at the Southwest Eye Center in April of 2010, and eye surgery was apparently set for May 10, 2010 -- although the precise circumstances are unclear. Plaintiff, however, was not told the date of the scheduled surgery (and Haleem may have needed approval from authorities in Hawaii).

Thus, Plaintiff argues that he could not have known *when* to file a

16

grievance complaining to SCC that he was not having the eye surgery.  *See* Doc.

Nos. 38-2 ¶ 16, 37-1 ¶ 4.[5]  Even if he knew surgery was scheduled at some point in

the future, he was transferred from SCC to HCF only two months after the April

22, 2010 examination -- effectively leaving no time to have filed a grievance at

SCC regarding the lack of scheduled surgery.  In essence, the timing of the transfer

appears to have rendered an administrative remedy at SCC "unavailable."  *See*

*Bradley*, 441 F. Supp. 2d at 102-03; *Key*, 660 F. Supp. 2d at 525; *see also Braswell*

*v. Corr. Corp. of Am.*, 2009 WL 2447614, at *9 (M.D. Tenn. Aug. 10, 2009)

("Transfer to another facility may render remedies unavailable if the first facility at

which the incident occurred does not have a procedure in place to receive

grievances from another facility.").

Haleem has the burden of demonstrating that Plaintiff failed to

exhaust available administrative remedies.  *Jones*, 549 U.S. at 216; *Wyatt*, 315 F.3d

at 1119.  And he has not demonstrated that SCC still had a remedy available after

Plaintiff was transferred to HCF.  *See Purkey v. CCA Detention Ctr.*, 263 Fed.

Appx. 723, 726 (10th Cir. 2008) ("Defendants must necessarily prove that . . .

---

[5]  Plaintiff argues that withholding this specific medical information (the date of surgery) was tantamount to "screening" his grievance rights.  Doc. No. 37 at 2.  The court disagrees. Prudent prison policy prevents an inmate from knowing the exact date in advance -- if prisoners know precisely when surgery will take place at a non-prison facility, it could facilitate escape plans.  *See* Doc. No. 38-2 ¶ 16.  Rather, it was the timing of the transfer that might have prevented Plaintiff from filing a proper grievance.

administrative remedies were, in fact, available to [plaintiff] after he left CCA's custody[.]"); *King v. Coleman*, 2007 WL 2330767, at *3 (E.D. Cal. Aug. 13, 2007) (excusing exhaustion where County "Defendants have not borne their burden of showing that administrative remedies were available to plaintiff" who was now in state custody seeking relief for violations while in County custody).

Indeed, soon after his transfer back to HCF, Plaintiff filed a grievance on August 1, 2010 regarding his vision, complaining in part:

> I would like to make known of a Deliberate Indifference Act that was caused upon my arrival at Halawa Correctional facility Medical Unit . . . this has been a on going three year of In need of surgery Due to loss of sight In my left eye that Department of public safety Halawa correctional facility medical unit was Informed of this need Instead acted cruel and unusual causing vision loss[.] . . . . Immediate action would take place with adequate medical care as well as realease to do surgery with own specialist who would perform surgery without delay's, of knowing this serious issue.

Doc. No. 27-7 Ex. 5, at 4 (grammatical errors in original). As indicated above, however, this HCF grievance does not satisfy SCC's administrative procedures.[6]

Nevertheless, Plaintiff's Complaint -- as currently pled -- does not specifically assert that the failure of Haleem or others to provide the scheduled eye

---

[6] Plaintiff apparently then had eye surgery -- the resolution of the grievance states "[s]urgery done 9/9/10" -- although there is no indication the surgery was because of his grievance. The record does not indicate if surgery was successful, or if a delay in having surgery itself caused injury.

18

surgery in May 2010 was a violation of Plaintiff's constitutional rights. Although Plaintiff argues that "the eye surgeon in Arizona informed Dr. Haleem's office that [Plaintiff] needed surgery, but it was never done [and that] [t]his constitutes deliberate indifference on the part of Dr. Haleem," Doc. No. 37 at 3, this theory is not pled in the Complaint.

Rather, the Complaint only alleges as to Haleem that he "failed to adequately treat eye resulting in pain & anguish and loss of sight." Doc. No. 1 at 2. It alleges broadly that "since 2007 Doctors: Defendant(s) Dr. Rosen; Dr. DeWitt; and Dr. Haleem have failed to adequately treat eyes[.]" *Id.* at 5. As Haleem points out, the Complaint is not alleging constitutional violations or inadequate medical treatment for eye surgery not taking place in May of 2010.[7] Doc. No. 38 at 9. Instead, the Complaint alleges continuous inadequate medical treatment for Plaintiff's vision during his entire incarceration at SCC.[8] Assuming

---

[7] The Complaint only hints that a claim against Haleem is related specifically to the failure to provide surgery in 2010 when it states "Dr. Haleem Dr @ Saguaro stated awaiting approval from Hawaii to treat." Doc. No. 1 at 5. This vague allegation is insufficient to raise a claim regarding a lack of surgery in May 2010, although it does indicate that an Amended Complaint might not be futile. Plaintiff attests that he was unaware of a May 2010 surgery date until March 2011 when he saw the discovery in this action. Doc. No. 37-1 ¶ 5.

[8] Plaintiff states that he "was sent by the doctor [at SCC] to see two eye specialists[.]" Doc. No. 27-1 ¶ 3. "The first specialist recommended in 2008 that I have surgery on my left eye. That surgery was never performed on my left eye." *Id.* ¶ 4. "The second specialist doctor recommended that I have surgery on my left eye, I believe, in April of 2010, but again, that surgery was never done." *Id.* ¶ 5.

for present purposes that the Complaint's allegations are true, Plaintiff knew that he was not receiving adequate medical treatment for his vision from when he was transferred to SCC in June of 2008, until he was transferred back to HCF in June of 2010. Yet he never filed any Informal Resolutions or Grievances during that time. That is, remedies were in fact "available" for Plaintiff to have grieved the allegations in the Complaint. And thus his transfer from SCC back to HCF did not render remedies "unavailable" for the Complaint's allegations.

The court will therefore GRANT Haleem's Motion to Dismiss. The Complaint as drafted alleges claims against Haleem that were not exhausted and for which remedies were available. The court, however, will grant Plaintiff leave to file an Amended Complaint. *See, e.g.*, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (citation omitted). As analyzed above, there is at least a possibility that an Amended Complaint regarding Haleem can be filed that would not be barred by the exhaustion requirement.

An Amended Complaint also makes sense as a practical matter. Plaintiff now has counsel and an Amended Complaint might avoid other confusion regarding the nature and scope of Plaintiff's action, which currently is handwritten

on prison-litigation forms. The court emphasizes, however, that any Amended Complaint may not change legal theories (*i.e.*, beyond making claims related to alleged violations of the Eighth Amendment for deficient medical treatment regarding Plaintiff's vision) such that Defendants would be unfairly prejudiced. *See, e.g.*, *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (upholding denial of amendment that would have prejudiced Defendants by belatedly adding new legal theories requiring proof of different facts). Rather, the court is allowing an Amended Complaint so Plaintiff (now that he has counsel) may clarify factual allegations or existing theories, and attempt to address pleading deficiencies. Defendants should not be prejudiced from such an Amended Complaint -- the deadlines for amended pleadings, discovery, and substantive motions have not passed, and the overall nature of the action should not change. *See* Doc. No. 19.

## IV.  CONCLUSION

Plaintiff failed to exhaust his administrative remedies as to the Complaint's allegations against Haleem. An "effectively unavailable" exception to the exhaustion requirement does not apply to the Complaint. Accordingly, Haleem's Motion to Dismiss is GRANTED, and the Complaint is dismissed without prejudice as to claims against Haleem. Plaintiff, however, is given leave to file an Amended Complaint in accordance with this Order. Plaintiff may file an

Amended Complaint by **April 29, 2011.** If Plaintiff does not file an Amended

Complaint, the action will proceed under the existing allegations as to Rosen and

DeWitt only.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 15, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Namauʻu v. Dr. Rosen, et al.*, Civ. No. 10-00475 JMS/KSC, Order Granting Defendant Dr.
Haleem's Motion to Dismiss Complaint filed 8/17/10, and Granting Leave to Amend